JACKSON *v.* TROGAN.

CARPENTER *v.* SAME.

LOTT *v.* SAME.

JENKINS *v.* SAME.

1. AUTOMOBILES—SPEED—OPINION TESTIMONY—FORCE OF IMPACT.
   Admission in evidence of opinion of State police officer who investigated accident, occurring at midnight when plaintiffs' southbound car struck defendants' car, previously northbound, while engaged in making a U-turn on a State trunkline highway, as to speed of plaintiffs' car immediately prior to accident, with 15-foot skidmarks before collision and defendants' car pushed broadside for 110 feet, *held*, reversible error, for lack of proper foundation, where the officer had been in the police service for only 1 year, no showing is made that he had ever investigated accidents of the exact kind and character theretofore, nothing is shown as to the weights of the automobiles, the nature of the surface of the pavement, whether brakes or motor of plaintiffs' car were operating, as an estimate of speed based simply on an opinion of the force of impact is not evidence of speed, the verdict for defendants indicating that jury accepted latter's claim that negligence of plaintiff operator was the sole proximate cause of the accident, and the officer's testimony was material and bore directly on such issue.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5A Am Jur, Automobiles and Highway Traffic §§ 997, 999.
   Opinion evidence as to speed of automobile or motorcycle.    70 ALR 540, 94 ALR 1190.
   Expert or opinion evidence as to speed based on appearance or condition of automobile after accident.   133 ALR 726.
[2] 5A Am Jur, Automobiles and Highway Traffic §§ 814–819.
   Comment Note: Negligence of driver of automobile as imputable to passenger.   90 ALR 630, 123 ALR 1171.
[3] 53 Am Jur, Trial § 65.
[4] 53 Am Jur, Trial § 55.
[5] 30 Am Jur, Intoxicating Liquors §§ 540–543.

2. SAME—NEGLIGENCE OF OPERATOR NOT IMPUTED TO GUEST PAS-
SENGERS.

  The negligence of the driver of a car involved in an accident
  is not to be imputed to his guest passengers.

3. ACTION — CONSOLIDATION — CONVENIENT ADMINISTRATION OF JUS-
TICE.

  The term "convenient administration of justice," as used in
  statute providing for the consolidation and trial of actions, does
  not give primary emphasis upon expediting the work of the
  court, but rather the possible effect of consolidation for trial
  on the actions involved in a given situation (CL 1948, § 608.1).

4. AUTOMOBILES—SEPARATE TRIALS OF ACTION BY DRIVER AND PAS-
SENGERS AGAINST THIRD PARTIES.

  Actions by guest passengers and derivative actions based on
  their injuries received when southbound car they were in col-
  lided with defendants' car, previously northbound, while making
  a U-turn at midnight on a State trunkline highway, are ordered
  to be tried against defendants separate from that of the action
  by the driver of their car to avoid prejudicing the guest plain-
  tiffs in the minds of the jurors (CL 1948, § 608.1).

5. SAME—NEW TRIAL—PARTIES.

  Defendants, owners of tavern who had allegedly illegally sold liq-
  uor to defendant driver after he was intoxicated, and who had
  moved for directed verdicts in their favor at the conclusion of
  plaintiffs' proofs on the ground that defendant driver was not
  negligent, are subjected to new trial, granted because of revers-
  ible error in the admission of evidence of negligence of plaintiff
  driver, inasmuch as evidence received might have led to a finding
  that negligence of defendant driver, if any, was not a proximate
  cause of the accident and no appeal was taken from failure
  of trial court to grant the motion for directed verdict which
  the court had taken under advisement (CL 1948, § 691.691 *et
  seq.*).

Appeal from Saginaw; Borchard (Fred J.), J.
Submitted June 7, 1961. (Docket Nos. 12, 13, 14, 15,
16, 48, Calender Nos. 48,539, 48,540, 48,541, 48,542,
48,543, 48,544.) Decided September 22, 1961.

Case by Franklin D. Jackson against Angelo E.
Trogan, administrator of the estate of Russell
Ross, deceased, and Claud J. Utley, Elmer J. Utley,

and Lillian M. Utley, doing business as Rainbow Inn, for personal injuries sustained in automobile collision.

Actions by Lorene Carpenter, Joyce Lott, George Lott, William L. Jenkins, and Willie Carpenter against the same defendants for personal injuries and medical expense of passengers in plaintiff Jackson's automobile.

Cases consolidated for trial and on appeal. Verdicts and judgments for defendants. Plaintiffs appeal. Reversed and remanded for new trials.

*Elisha Scott, Jr.,* for plaintiffs.

*Heilman & Purcell,* for defendant Trogan, administrator.

*Cartwright, Walker & Stenglein,* for defendants Utley.

CARR, J. The traffic accident here involved occurred on trunkline highway US–10, in Saginaw county, on the 27th day of July, 1957, shortly before midnight. At the time plaintiff Franklin D. Jackson was operating his automobile, a 1956 Ford, in a southerly direction on said highway. Riding with him in his car were plaintiffs Lorene Carpenter, Joyce Lott, and William L. Jenkins. Defendant administrator's decedent, Russell Ross, had been, immediately prior to the accident, operating a 1952 Pontiac in a northerly direction on trunkline US–10. It was his intention, however, to leave said highway at its intersection with Townline road but for reasons ascribed to weather conditions he passed said intersection, and on discovering such fact stopped on the east shoulder of the road for the purpose of making a U-turn and returning to Townline road.

The record before us indicates that Mr. Ross waited for a southbound car to pass, and then undertook to execute his contemplated turn. Before he had completed it and while his car was in the southbound lane of traffic on US–10, next to the center line, his vehicle was struck by the automobile of plaintiff Jackson, badly damaged, and shoved along the highway for some distance. Mr. Ross and his wife, who was a passenger in the car, received injuries resulting in the death of each. Riding with Mr. Ross were Mr. and Mrs. Daughtless Morris, both of whom were witnesses on the trial.

The occupants of the Jackson car all sustained injuries and brought separate actions to recover damages therefor. Joined as defendants were the administrator of the estate of Russell Ross, and Claud J. Utley, Elmer J. Utley and Lillian M. Utley, alleged to have been carrying on business under the name of the Rainbow Inn. Plaintiff George Lott also sued to recover damages resulting to him because of injuries to his wife Joyce, and Willie Carpenter likewise sought to recover for losses that he claimed to have sustained because of injuries suffered by his wife Lorene. It was the claim of each of the plaintiffs that the proximate cause of their injuries was negligence on the part of Mr. Ross in the operation of his automobile on the occasion in question, with particular reference to his driving on the west side of the highway in attempting to make the U-turn.

It was further alleged by plaintiffs in their respective pleadings that Mr. Ross was under the influence of intoxicating liquor at the time, and that defendants Utley had unlawfully sold him an intoxicating beverage while he was intoxicated, or which contributed to his intoxication. During the course of the trial the case was dismissed as to defendant Claud J. Utley. Defendants filed answers to the

declarations, defendant administrator pleading affirmatively that plaintiff Jackson was guilty of contributory negligence in that he drove at a high and uncontrollable rate of speed, that he was unable to stop his car in the assured clear distance ahead, and that he failed to make proper observations of other vehicles on the highway.

On the pretrial hearing of the cases they were ordered consolidated for trial, the circuit judge concluding that such course would be for the "convenient administration of justice."* Counsel for plaintiffs objected at the time to consolidating with the case of plaintiff Jackson the cases of other plaintiffs who were, as it was claimed, guest passengers in the Jackson car. The objection was overruled, and the cases were tried together pursuant to the court's order.

On behalf of plaintiffs testimony was offered on the trial with reference to the manner in which the accident occurred, including particularly the action of Mr. Ross in attempting to make the U-turn in order to return to the Townline road, the intersection of which with the trunkline was approximately 300 feet to the south. It was the theory of the plaintiffs that Mr. Ross had failed to exercise reasonable and proper care for the safety of others on the highway in the operation of his automobile, and that such failure was the proximate cause of the accident. On behalf of defendants testimony was offered for the purpose of showing that plaintiff Jackson was driving his car at an excessive rate of speed, that he was grossly negligent in so doing, and that he was otherwise negligent in failing to make proper observations as to other traffic on the highway. It was, in substance, the claim of defendants that the sole proximate cause of the accident was the negli-

---

* See CL 1948, § 608.1 (Stat Ann § 27.591).—Reporter.

gence of said plaintiff. The jury returned verdicts for defendants, and plaintiffs have appealed, claiming that prejudicial errors occurred in the course of the trial for which the judgments should be reversed and new trials granted.

The accident was investigated by a member of the State police who was subpoenaed as a witness by defendants as well as by plaintiffs. He was called to testify by counsel for plaintiffs and described the condition of the cars as he found them when he reached the scene shortly after the accident had occurred. The trooper's testimony indicated that the Jackson car had struck the Ross car broadside with such force as to penetrate it within 2 feet of the opposite side of the vehicle. The witness also testified to skid marks made by the Jackson car prior to the point of impact and extending for a distance of 15 feet to such point, and to further marks on the pavement indicating that the Ross car had been shoved sideways along the paved surface of the highway for a distance of 110 feet. Based on such facts it was contended on behalf of defendants that plaintiff Jackson had been driving at an excessive speed. According to the testimony of the officer, plaintiff Jackson stated that his speed was 65 miles an hour.

The witness, who had been a member of the State police for a little over 1 year at the time of the accident involved in this case, testified that he had previously investigated "a few accidents." On examination by counsel for defendants he was asked as to whether he had an opinion, based on his observations of the cars and the fact that plaintiff Jackson's car had shoved the Ross car along the highway for a distance of 110 feet, as to the rate of speed that the Jackson car was traveling at the time of the impact. Objection was made to the question on the ground that there had been no showing that the officer was

qualified as an expert, and that any computation as to speed was "a matter of physics and mathematics." In answer to the question the witness testified as follows:

"*A.* I have an opinion, Your Honor.
"*The Court:* Go ahead.
"*Q.* What is it?
"*A.* I would say an excessive rate of speed; I would say better than 80 miles an hour.
"*Q.* Better than 80 miles an hour to get that—
"*Mr. Scott:* Of course, I object again.
"*Q.* Now, along there what is the speed limit in this district?
"*A.* At that hour it is 55 miles an hour.
"*Q.* After dark the speed limit along here is 55 miles an hour?
"*A.* Right.
"*Q.* During the daylight it is 65?
"*A.* 65."

Questioned by counsel for the plaintiffs the witness further testified as indicated in the following excerpts from the record:

"*Q.* Now, can you determine with mathematical certainty or mathematical formula the rate of speed of the Jackson car?
"*A.* No.
"*Q.* Why not?
"*A.* I am not able to.
"*Q.* In other words, you are not an expert in determining speed by reason of skid marks, are you, you don't classify yourself as an expert?
"*A.* The skid marks that were left by the Ross car would indicate that the car would have to be going sideways 50 miles an hour to show those marks.
"*Q.* Prove that to us.
"*A.* We can't prove it; we have a chart to go by; it would indicate that.
"*Q.* Of your own knowledge, then, you can't testify as to how fast the cars were going?

*"Mr. Heilman:* Just a minute, this is his witness, Your Honor, he is arguing with his own witness.

*"The Court:* I am going to sustain the objection.

*"Q.* Did you indicate in your report how fast the Jackson car was travelling?

*"A.* In the accident report that I typed, I put in the speed that Mr. Jackson told me he was travelling.

*"Q.* How fast did he tell you he was travelling?

*"A.* 65 miles an hour.

*"Q.* You didn't put it in as a conclusion, your own opinion?

*"A.* No, I don't believe so.

*"Q.* When did you first arrive at that opinion that Mr. Jackson was travelling 80—in excess of 80 miles an hour?

*"A.* At the time I investigated the accident. * * *

*"Q.* Now, you have had no special training—or have you had special training in determining the speed of an automobile from skid marks?

*"A.* I have been taught how to figure it out mathematically, however, we have, as I said, a graduated chart that we use to determine, but I have forgotten the form.

*"Q.* Do you have the chart with you?

*"A.* No, I don't.

*"Q.* Did you use any mathematical computation to figure this?

*"A.* I used the chart we have.

*"Q.* Can you do it now?

*"A.* No, I don't have it with me.

*"Q.* Well, I would like to have you bring the chart and see if you can figure that out; that's the basis for your opinion; you did figure it out before you came to court?

*"A.* As I say, the skid marks left by the Ross car, as I recall on the chart, would indicate that the car would have to have been going 55 miles an hour sideways; I believe, to get the car going 55 miles an hour, it would have been hit at 80 miles an hour.

"*Q.* Can you prove that by mathematical computation?

"*A.* No, I can't, that's my own reasoning."

On behalf of appellants it is insisted that the court was in error in permitting the witness to express an opinion as to the speed of the Jackson automobile at the time of the impact. In view of the claim of the defendants that plaintiff Jackson's alleged negligence was the sole proximate cause of the accident, it is apparent that the testimony given by the officer was material. Whether the opinion expressed was competent is a matter requiring serious consideration. Was it, as claimed on behalf of appellants, based on speculation and conjecture and lacking a proper factual basis? It will be noted that the witness referred in his testimony to certain training that he had had and to a chart. There was, however, no explanation as to the character or extent of such training. The chart referred to was not produced and there is nothing in the record before us to indicate the bases thereof or the kind and character of situations to which it might be regarded as applicable, or if prepared as the result of proper tests. It will be noted that the witness stated that he formed his opinion of a speed in excess of 80 miles per hour at the time he investigated the accident. No claim is made that he had the chart with him at the time. It is significant also that the witness conceded that the rate of speed could not be proved by him by mathematical computation, and that he had arrived at his result by his "own reasoning."

We are impressed that no proper foundation was laid for the testimony of the officer, the admission of which is claimed to have been erroneous. There is no showing that the witness had ever investigated accidents of the exact kind and character of that here involved. We are not concerned merely with a car

skidding for a certain distance but, rather, with one vehicle striking another broadside and shoving it for a considerable distance along the pavement. There is nothing in the record to indicate the weights of the automobiles, nor whether the surface of the pavement over the distance traversed was level. It appears that no marks were left by the tires of the Jackson car beyond the point of impact, which would suggest that the brakes were not operating during such movement. Presumably the car remained in gear, but there is nothing to indicate whether the motor of the car was running or otherwise. In view of the many factors necessary to be taken into account in forming an opinion as to the matter of speed under circumstances of the nature here involved, we conclude that the admission in evidence of the opinion of the witness was erroneous. As stated in *Hinderer* v. *Ann Arbor R. Co.*, 237 Mich 232, 235 (26 NCCA 871):

"An estimate of speed based simply on an opinion of the force of impact is not evidence of speed. (Citing cases.)"

See, also, *Leitch* v. *Getz*, 275 Mich 645.

Under the circumstances of the case the error in question was sufficiently serious to require reversal. The verdicts returned in favor of the defendants indicated that the claim of the latter that the negligence of plaintiff Jackson was the sole proximate cause of the accident was accepted by the jury. The testimony of the officer here in question bore directly on the issue as to such negligence. The fact that recovery was denied the guest passengers is inconsistent with any other theory as to the basis of the verdicts returned.

On behalf of appellants other than plaintiff Jackson it is insisted that the trial court was in error in consolidating their cases with that of the driver of

the car in which they were riding. The argument is in substance that because of the proofs relating to the speed of the Jackson car the other plaintiffs were materially prejudiced by being forced to try their alleged causes of action with that of the driver. The theory on which defendants tried the cases, and the fact that they prevailed, tends to accentuate the claim now made. It is, of course, true that the issues involved in all 6 of the cases instituted were substantially identical except that, while plaintiff Jackson might be prevented from recovering by a showing of contributory negligence on his part, such negligence would not be imputed to the other plaintiffs. It is quite possible that some confusion in the minds of jurors might have resulted from the situation that was developed from the proofs, a situation that was foreseeable at the time the pretrial hearing was held.

Admittedly the plaintiffs could not have joined their alleged causes of action in 1 case. *Hardware Dealers Mutual Insurance Company* v. *R. H. Hidey, Inc.,* 349 Mich 490, and prior decisions there cited. The situation here involved is not analogous to that in *Martin* v. *Grand Trunk Western R. Co.,* 351 Mich 112. The actions there involved were for personal injuries by a minor and for expenses incurred by the father of such minor for doctor and hospital bills. No objections were made to the trial of both of the cases at the same time. It might well be said under such circumstances that consolidation for trial would promote the convenient administration of justice. It may be doubted if such was the situation in the case at bar. By promoting the "convenient administration of justice" we do not mean expediting the work of the court, although that element may be given some consideration. More specifically, the phrase should be considered in connection with the possible effect of consolidation for trial on the actions involved in a given situation.

It will be noted that in *Card* v. *Nemecek,* 331 Mich 614, in which actions were brought by a husband and wife as the result of a traffic accident in which the wife received personal injuries, the cases were consolidated for trial by court order and after verdict was rendered the trial court concluded that the wife had been prejudiced by the consolidation and granted a new trial as to her. On appeal this Court granted a new trial to the husband also. Inasmuch as the instant cases must be reversed and remanded because of the error hereinbefore discussed, we think that as a matter of fairness to appellants other than plaintiff Jackson they should be granted a separate trial. No reason is suggested why the cases of the 5 plaintiffs in question may not properly be tried together.

On behalf of defendants Utley it is insisted that the judgment entered in their favor on the verdict of the jury should be affirmed on the theory that no negligence on the part of defendant Ross was shown. As hereinbefore pointed out, however, the conclusion may scarcely be avoided that the jury based its verdicts against all of the plaintiffs on the finding that the sole proximate cause of the accident was negligence on the part of plaintiff Jackson. The testimony presented to the jury on the consolidated trials, including the testimony improperly received, might have led to a finding on the part of the jury that any negligence on the part of Mr. Ross, if such there was, did not contribute to the accident. It may be noted also with reference to the request on the part of counsel for defendants Utley that at the conclusion of plaintiffs' proofs a motion for a directed verdict in their favor was made and was taken under advisement by the court.* No appeal has been taken by said defendants from the failure to grant said motion when made.

---

* See CL 1948, § 691.691 *et seq.* (Stat Ann and Stat Ann 1959 Cum Supp § 27.1461 *et seq.*).—REPORTER.

Discussion of other matters raised in the briefs of counsel becomes unnecessary in view of the holding that new trials must be granted. The cases are remanded with directions to set aside the judgments entered and to proceed in accordance herewith.

DETHMERS, C. J., and KELLY, TALBOT SMITH, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.