## PEOPLE v MEADOWS

1. CRIMINAL LAW—EVIDENCE—PROSECUTORS—ORDER OF PROOFS.

   The prosecution should not be permitted to divide the testimony which it proposes to prove its case; a defendant is entitled to have the testimony introduced in its proper order.

2. CRIMINAL LAW—EVIDENCE—REBUTTAL TESTIMONY—REFUTATION OF OPPONENT'S EVIDENCE.

   Evidence which tends to prove the commission of the crime itself or the immediate circumstances surrounding the offense cannot ordinarily be classified as rebuttal; legitimate rebuttal testimony is limited to the refutation or impeachment of relevant and material evidence properly raised by the opposing party.

3. CRIMINAL LAW—EVIDENCE—ADMISSION—CASE IN CHIEF.

   Testimony that constitutes an admission can only be presented during the prosecutor's case in chief.

4. CRIMINAL LAW—APPEAL AND ERROR—HARMLESS ERROR—PREJUDICE—MISCARRIAGE OF JUSTICE—STATUTES.

   The Court of Appeals will not reverse a conviction because of a trial error unless the error results in a miscarriage of justice;

REFERENCES FOR POINTS IN HEADNOTES

[1] 63 Am Jur 2d, Prosecuting Attorneys § 27.
    75 Am Jur 2d, Trial § 158.
[1, 2] 29 Am Jur 2d, Evidence § 250.
[2, 5, 6] 29 Am Jur 2d, Evidence § 269.
[3] 29 Am Jur 2d, Evidence §§ 597, 598.
[4] 5 Am Jur 2d, Appeal and Error § 783.
[5, 6] 75 Am Jur 2d, Trial §§ 124–127.
[7, 10] 17 Am Jur 2d, Continuance § 42.
[8–10] 41 Am Jur 2d, Indictments and Informations § 60.
    81 Am Jur 2d, Witnesses § 74.
[11] 75 Am Jur 2d, Trial §§ 548–558.
[12–14] 40 Am Jur 2d, Homicide §§ 44–52.
[13, 14] 40 Am Jur 2d, Homicide §§ 438, 439, 454.
    Premeditation: presumption of deliberation or premeditation from the fact of killing. 86 ALR2d 656.
    Homicide: what constitutes "lying in wait". 89 ALR2d 1140.
[14] 5 Am Jur 2d, Appeal and Error § 976.

two separate inquiries are involved in determining whether the error complained of substantially prejudiced the rights of an accused: first, whether the error is so offensive to the maintenance of a sound judicial process that it can never be regarded as harmless; and second, whether it is reasonably possible that in a trial free of error one juror may have voted to acquit (MCLA 769.26; MSA 28.1096).

5. CRIMINAL LAW—EVIDENCE—REBUTTAL TESTIMONY—CASE IN CHIEF —PREJUDICIAL ERROR.

The introduction of evidence in rebuttal, which properly belongs in the prosecution's case in chief, is not an error which is always regarded as prejudicial.

6. EVIDENCE—REBUTTAL TESTIMONY—IMPROPER ADMISSION—PREJUDICE.

Evidence improperly presented in rebuttal which merely expands upon or supports testimony previously admitted is not prejudicial.

7. CRIMINAL LAW—TRIAL—REBUTTAL TESTIMONY—CASE IN CHIEF—CONTINUANCES—CROSS-EXAMINATION—SURREBUTTAL TESTIMONY.

Any prejudice caused by allowing a prosecutor to present evidence which properly should have been presented in his case in chief was dissipated where the court granted defense counsel's request for a continuance to prepare for cross-examination of the rebuttal witness and by a defendant's surrebuttal testimony.

8. INDICTMENT AND INFORMATION—WITNESSES—PROSECUTORS—INDORSEMENT OF WITNESSES—INFORMATIONS—PRODUCTION OF WITNESSES—RES GESTAE WITNESSES.

A prosecutor shall indorse on an information the names of the witnesses known to him at the time of filing the information; additional witnesses may be indorsed on the information before or during trial by leave of the court; the indorsement and production of res gestae witnesses is a mandatory requirement (MCLA 767.40; MSA 28.980).

9. INDICTMENT AND INFORMATION—WITNESSES—PROSECUTORS—INDORSEMENT OF WITNESSES—INFORMATIONS—REBUTTAL WITNESSES.

A prosecutor is required to indorse the names of witnesses on an information to protect the accused from false accusation and to permit a criminal defendant an opportunity to prepare for

cross-examination; rebuttal witnesses, if known to the prosecutor, should also be indorsed on the information.

10. WITNESSES—CRIMINAL LAW—INDORSEMENT OF WITNESSES—LATE INDORSEMENT—JUDGE'S DISCRETION.

The late indorsement of witnesses is within the discretion of the trial court, having due regard for the defendant's right to a fair trial; ordinarily, the late indorsement of a witness should be permitted and a continuance granted so as to obviate any potential prejudice.

11. APPEAL AND ERROR—CRIMINAL LAW—TRIAL—DIRECTED VERDICT OF ACQUITTAL.

An appellate court in reviewing a motion for a directed verdict of acquittal examines the record as it existed at the time the motion was made in the light most favorable to the prosecution to determine whether the people have introduced some evidence as to each element of the crime charged.

12. HOMICIDE—FIRST-DEGREE MURDER—ELEMENTS OF OFFENSE—STATUTES.

First-degree murder consists of the common-law offense of murder committed under any of the circumstances enumerated by statute (MCLA 750.316; MSA 28.548).

13. HOMICIDE—FIRST-DEGREE MURDER—PREMEDITATION AND DELIBERATION—PRIOR RELATIONSHIPS—ACTIONS OF DEFENDANT—IMMEDIATE CIRCUMSTANCES—POST-HOMICIDE CONDUCT.

Factors to be considered in determining whether an accused had an opportunity to subject his actions to a second look in determining premeditation and deliberation include: (1) the previous relationship of the parties, (2) the defendant's actions prior to the killing, (3) the circumstances of the killing itself, and (4) the defendant's conduct after the homicide.

14. HOMICIDE—FIRST-DEGREE MURDER—SECOND-DEGREE MURDER—EVIDENCE—PREMEDITATION AND DELIBERATION—REMAND—RESENTENCING—LESSER INCLUDED OFFENSE.

Remand to the trial court for entry of a judgment convicting a defendant of second-degree murder and for resentencing on that conviction should be made where the conviction was for first-degree murder and the trial evidence does not support a finding of premeditation and deliberation in the commission of the murder.

Appeal from Oakland, John N. O'Brien, J. Sub-

mitted June 22, 1977, at Lansing. (Docket No. 28526.) Decided November 30, 1977.

Charles W. Meadows, III, was convicted of first-degree murder and assault with intent to commit murder. Defendant appeals. Affirmed in part, modified in part, and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Thomas S. Richards,* Assistant Prosecuting Attorney, for the people.

*Nicholas Smith, P. C.,* for defendant on appeal.

Before: D. F. Walsh, P. J., and Quinn and H. D. Stair,* JJ.

Per Curiam. Defendant was tried by jury and found guilty of first-degree murder[1] and assault with intent to commit murder.[2] He received concurrent life sentences for each offense and now appeals.

The instant prosecution arose out of events occurring on the morning of May 21, 1972. On that date defendant, Rueben Herrerra and Michael Colleran were riding in a rented 1973 Gremlin automobile in Oak Park, Michigan. Defendant was driving. All three men were on parole. Michael Colleran had a .38-caliber revolver on his person. There was also a sawed-off shotgun in the car. The shotgun was owned by defendant.

Oak Park Police Officer Henry Wolf began following defendant's automobile which was exceed-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] MCLA 750.316; MSA 28.548.

[2] MCLA 750.83; MSA 28.278.

ing the speed limit. He reported the pursuit by radio. Defendant realized that he was being followed and became concerned over the fact that Colleran had a revolver on his person.[3] Defendant slowed down and Colleran jumped out but he threw the revolver on the front passenger seat. Officer Wolf pulled behind the defendant and directed him to stop. Defendant left the car, met the officer midway between the two vehicles and produced his driver's license. Wolf then accompanied the defendant to defendant's automobile where he asked Rueben Herrerra for identification. A struggle between the three men ensued and Officer Wolf was shot in the back.

Defendant removed the officer's body from the side of the automobile and drove off. As he did so, Officer Nimmor, responding to Officer Wolf's radio report, turned onto the street on which the shooting had occurred. According to Officer Nimmor, as the two cars approached one another, defendant rested a revolver on the steering wheel of his vehicle and shot at the officer. Ultimately, the two cars collided and defendant was taken into custody.

On appeal defendant argues, in part, that the trial court erred in permitting a prosecution witness to be called in rebuttal and in denying his motion for a directed verdict as to the charge of first-degree murder.

During cross-examination the prosecutor questioned the defendant as to his conversations with Frank Parker in the Oakland County jail following defendant's arrest on the present charges. Defendant denied that he had admitted the shootings to

---

[3] Defendant was unconcerned with the presence of the sawed-off shotgun in the automobile being of the opinion that its possession did not constitute a felony.

Parker and that he had asked Parker to be a witness in his behalf. Parker was called as a rebuttal witness. Defense counsel objected on the grounds that Parker had not been indorsed on the information and that his testimony should have been introduced in the prosecutor's case in chief. The trial court permitted Parker to testify.

Parker took the stand and testified that defendant had asked him to be a witness. He produced instructions, handwritten by the defendant, concerning the testimony which he was to give, and also a letter, written by the defendant to Parker's wife, directing her to examine the scene of the shooting in order to determine the plausibility of the testimony. Parker also testified that defendant told him that he held Officer Wolf expecting Herrerra to shoot, and that when Herrerra failed to do so, defendant seized the officer's own revolver and shot him. According to Parker, defendant also admitted shooting at Officer Nimmor during the attempted escape.

After cross-examining the witness briefly, defense counsel moved that Parker's testimony be stricken and a mistrial declared on the same grounds earlier argued. Relying on its former ruling, the trial court denied the motion. The court granted defense counsel's request, however, that his cross-examination of the witness be continued to the following day in order to permit further preparation.

The next day, after defense counsel's cross-examination of Parker, defendant was called in surrebuttal. Defendant testified that it was Parker who suggested that he be a witness in defendant's favor. Defendant further testified that he had maintained his innocence to Parker. He admitted writing the instructions and letter to Parker's wife

but stated that the exhibits were prepared at Parker's direction. Except for Parker's presence at the scene, defendant stated that the facts recited in the handwritten instructions were true. He further testified that he changed his mind about permitting Parker to testify after discussing the matter with defense counsel.

Defendant's objections to the admission of the testimony were renewed in a motion for a new trial. The motion was denied.

The Michigan Supreme Court long ago ruled that the prosecution should not be permitted to divide the testimony upon which it proposes to prove its case. The defendant is entitled to have the testimony introduced in its proper order. *People v Quick,* 58 Mich 321; 25 NW 302 (1885), *People v Wright,* 74 Mich App 297; 253 NW2d 739 (1977), *People v Parker,* 65 Mich App 592; 237 NW2d 572 (1975). Evidence which tends to prove the commission of the crime itself or the immediate circumstances surrounding the offense cannot ordinarily be classified as rebuttal. *People v Quick, supra.* "Legitimate rebuttal testimony is limited to the refutation or impeachment of relevant and material evidence properly raised by the opposing party". *People v Ebejer,* 66 Mich App 333, 340; 239 NW2d 604, 609 (1976). Also, *People v Bennett,* 393 Mich 445; 224 NW2d 840 (1975). An admission can only be presented during the prosecutor's case in chief. *People v Bennett, supra, People v Lowe,* 71 Mich App 340; 248 NW2d 263 (1976). See, *People v Parker, supra.* The trial court erred in the instant case, therefore, by permitting Parker to testify in rebuttal. We do not, however, find the error reversible.

This Court will not reverse a conviction because of a trial error unless the error results in a mis-

carriage of justice. MCLA 769.26; MSA 28.1096. Two separate inquiries are involved in determining whether the error complained of substantially prejudiced the rights of an accused. First, whether the error is so offensive to the maintenance of a sound judicial process that it can never be regarded as harmless. Second, whether it is reasonably possible that in a trial free of the error one juror may have voted to acquit. *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972), *People v Swan,* 56 Mich App 22; 223 NW2d 346 (1974), *People v Christensen,* 64 Mich App 23; 235 NW2d 50 (1975).

The introduction of evidence in rebuttal, which properly belongs in the prosecution's case in chief, is not an error which is always regarded as prejudicial. *People v Rose,* 268 Mich 529; 256 NW 536 (1934), *People v Atcher,* 65 Mich App 734; 238 NW2d 389 (1975). See, *People v Ebejer, supra.* In the present case, this Court is convinced that the exclusion of Parker's testimony from rebuttal would not have altered the verdict as to either charge. Not only was the evidence of defendant's guilt overwhelming, but Parker's testimony in large measure merely duplicated testimony earlier given by other witnesses and by defendant himself.[4]

---

[4] An error deliberately injected by the prosecution is such an affront to the maintenance of a sound judicial system that it automatically requires reversal. *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972), *People v Swan,* 56 Mich App 22; 223 NW2d 346 (1974).

Following the definitive ruling of the Supreme Court in *People v Bennett,* 393 Mich 445; 224 NW2d 840 (1975), regarding the introduction of admissions, an error such as that which occurred in the present case might well be regarded as intentional. In the present case, however, we note that the trial occurred eight months prior to the Court's decision and that the procedure followed in the case at bar had previously been upheld by the Court. *People v DeLano,* 318 Mich 557; 28 NW2d 909 (1947), *cert den,* 334 US 818; 68 S Ct 1082; 92 L Ed 1748 (1948).

Lawrence Connolly, who resided near the scene of the shooting, saw Officer Wolf standing next to the Gremlin leaning inside. Connolly witnessed the defendant struggle with the officer, grab Wolf's revolver, step back and shoot him. Another witness, Hoy Smith, who was driving near the scene, saw the defendant standing outside the Gremlin holding a gun behind his back and also saw the feet and legs of someone bending over the front seat of the vehicle. Smith testified: "[T]he accused either spun or pushed the officer and the gun came out from behind his back and went inside the car and there was a shot". Other witnesses, while not seeing a weapon fired, corroborated the positions of the officer and the defendant and defendant's struggle with Wolf, during which time defendant grabbed at the officer's side. The Oakland County medical examiner testified that Officer Wolf died as a result of a gunshot wound between the shoulder blades. A state police officer trained and employed in firearms identification testified that the bullet which caused Wolf's death had markings similar to those contained in the revolver of the decedent. Officer Wolf's revolver was found on the ground near the defendant following defendant's collision with the vehicle driven by Officer Nimmor. The testimony of Officer Nimmor regarding defendant's assault upon him was fully corroborated by a second eyewitness. Finally, a forensic chemist testified that the presence of certain chemicals on defendant's left hand, and the area of their concentration, was consistent with the defendant having fired a gun.

The testimony presented at trial concerning defendant's actions and the location of the fatal wound to Officer Wolf demonstrates, in our opinion, that had Parker's testimony been eliminated

the jury would still have convicted the defendant of each offense.

Where evidence improperly presented in rebuttal merely expands upon or supports testimony previously admitted, no prejudice results. *People v Leonard E Smith,* 15 Mich App 173; 166 NW2d 504 (1968), *People v Joseph Barbara, Jr,* 23 Mich App 540; 179 NW2d 105 (1970), *People v Rosemary Gibson,* 71 Mich App 543; 248 NW2d 613 (1976).

Moreover, any prejudice caused by allowing the prosecutor to present at the conclusion of the trial evidence which properly should have been presented in his case in chief was dissipated by the fact that the court granted defense counsel's request for a continuance to prepare for cross-examination of the rebuttal witness and by defendant's surrebuttal testimony. *People v Rosemary Gibson, supra.*

This Court similarly finds that the trial court did not err in permitting Parker to testify notwithstanding the fact his name had not been indorsed on the information.

MCLA 767.40; MSA 28.980 provides that the prosecutor shall indorse on the information the names of the witnesses known to him at the time at which the information is filed. Additional witnesses may be indorsed on the information before or during trial by leave of the court. The mandatory requirement of indorsement and production has been restricted to res gestae witnesses. *People v Kayne,* 268 Mich 186; 255 NW 758 (1934), *People v Davis,* 343 Mich 348; 72 NW2d 269 (1955), *People v Rimson,* 63 Mich App 1; 233 NW2d 867 (1975). The purpose of the requirement is to protect the accused from false accusation, *People v Kayne, supra,* and to permit a criminal defendant an opportunity to prepare for cross-examination, *Peo-*

*ple v Quick, supra, People v Hammack,* 63 Mich App 87; 234 NW2d 415 (1975). The latter reason suggests that rebuttal witnesses, if known to the prosecutor, should also be indorsed on the information. *People v Quick, supra, People v Rose, supra, People v Hammack, supra.* See, also, *People v Gaiter* (amended order), 392 Mich 689; 222 NW2d 1 (1974).

The late indorsement of witnesses is within the discretion of the trial court, having due regard for the defendant's right to a fair trial. *People v Tann,* 326 Mich 361; 40 NW2d 184 (1949), *People v Harrison,* 44 Mich App 578; 205 NW2d 900 (1973), *People v Hammack, supra.* Ordinarily, the late indorsement of a witness should be permitted and a continuance granted so as to obviate any potential prejudice. *People v Harrison, supra.*

In the case at bar, Frank Parker was never formally indorsed on the information. Nevertheless, defense counsel requested and was granted a continuance to prepare for cross-examination, *People v Harrison, supra,* his subsequent questioning of the witness was vigorous, *People v Hammack, supra,* and defendant's surrebuttal testimony demonstrated counsel's familiarity with the subject of Parker's testimony some time prior to trial. Under the circumstances of the present case, the trial court did not err in permitting Parker to testify.

At the conclusion of the prosecution's case defense counsel moved for a directed verdict as to the charge of first-degree murder. Counsel argued that the prosecutor had failed to introduce evidence from which the jury could infer that the murder of Officer Wolf was deliberate and premeditated. The trial court denied the motion. Defendant now attacks the ruling of the trial court as erroneous. We agree.

In reviewing a motion for a directed verdict of acquittal, the record as it existed at the time the motion was made must be examined in the light most favorable to the prosecution to determine whether the people have introduced some evidence as to each element of the crime charged. *People v DeClerk,* 400 Mich 10; 252 NW2d 782 (1977), *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976).

First-degree murder consists of the common-law offense of murder committed under any of the circumstances enumerated by statute. MCLA 750.316; MSA 28.548, *People v Morrin,* 31 Mich App 301; 187 NW2d 434 (1971). In the present case defendant was charged with having murdered Officer Wolf with premeditation.

"To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem. As a number of courts have pointed out, premeditation and deliberation characterize a thought process undisturbed by hot blood. While the minimum time necessary to exercise this process is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look' ". *People v Morrin, supra,* at 329–330; 187 NW2d 449. (Footnotes omitted.)

Accord, *People v Vail,* 393 Mich 460; 227 NW2d 535 (1975), *People v Moss,* 70 Mich App 18; 245 NW2d 389 (1976). Factors to be considered in determining whether the accused had an opportunity to subject his actions to a second look include: (1) the previous relationship of the parties, (2) the defendant's actions prior to the actual killing, (3) the circumstances of the killing itself, and (4) the defendant's conduct after the homicide. *People v Berthiaume,* 59 Mich App 451; 229 NW2d 497

(1975), *People v Gill,* 43 Mich App 598; 204 NW2d 699 (1972).

We have reviewed all of the evidence relating to the circumstances surrounding the commission of the instant crime. We are persuaded that that evidence will not support the inference that the defendant murdered Officer Wolf with premeditation and deliberation. Accordingly, we remand the present case for the entry of a judgment convicting defendant of second-degree murder and for resentencing on that conviction. *People v Hoffmeister,* 394 Mich 155; 229 NW2d 305 (1975), *People v Morrin, supra.*

We have carefully considered the remaining issues raised by the defendant and find them to be without merit.

Affirmed in part; modified in part; and remanded.