PEOPLE, *ex rel* DIRECTOR OF CONSERVA-
TION *v* BABCOCK

1. ACTION—CONSOLIDATION—DIFFERENT PARTIES—SEPARATE JUDG-
   MENTS.
      Pending actions involving a substantial and controlling com-
      mon question of law or fact may be consolidated for trial;
      however, where the actions consolidated involve different par-
      ties, each action retains its separate character and a separate
      judgment for each is required (GCR 1963, 505.1).

2. ACTION—CONSOLIDATION—DIFFERENT PARTIES—CASES' INDENTITY.
      Consolidated cases keep their separate identities and parties in
      one action do not become parties to the other action nor do
      the pleadings in one case become pleadings in the other cases.

3. ACTION—CONSOLIDATION—DIFFERENT PARTIES—SEPARATE JUDG-
   MENTS.
      Entry of a single judgment in two cases which had been con-
      solidated because they involved common questions of law and
      fact between different parties was error where the judgment
      included a judgment against a party which had intervened
      as a defendant in only one of the cases.

4. ACTION—CONSOLIDATION—DIFFERENT PARTIES—COMMON PROOFS.
      Proofs in one case, consolidated with another case because of
      common questions of law and fact, can stand as proofs in the
      other consolidated case as to the common questions of fact.

---

REFERENCES FOR POINTS IN HEADNOTES
[1–4] 1 Am Jur 2d, Actions §§ 156–161.
[5] 1 Am Jur 2d, Actions § 161.
[6] 56 Am Jur, Waters § 429.
[7–13] 46 Am Jur 2d, Judgments § 394 *et seq.*
[14] 12 Am Jur 2d, Boundaries § 67.
[15] 56 Am Jur, Waters § 459.
[16] 56 Am Jur, Waters § 469 *et seq.*
[17] 56 Am Jur, Waters §§ 64, 397, 403, 421.

5. ACTION—CONSOLIDATION—DIFFERENT PARTIES—COMMON PROOFS.

Expert witness's testimony that a proposed landfill of submerged lake areas contiguous to defendants' property could interfere with the natural flushing effect caused by the renewal of water passing the channel beside their property, thus rendering pollution problems in the area more probable, could stand as testimony in defendants' case, even though the expert witness had been called by a party to a case which had been consolidated with defendants' case because the calling party was also a party in defendants' case.

6. NAVIGABLE WATERS—LANDFILL—EVIDENCE—HEALTH DETRIMENT.

Expert witness's testimony was sufficient to support the trial court's finding that defendants' proposed landfill of submerged lake lands contiguous to their property would be detrimental to the health of the communities served by the drain in that area where the witness, although unable to state definitely that the landfill would be a health hazard, did say that he could not see how it could be beneficial and, in response to a hypothetical question, said that the landfill would very possibly increase sedimentation and pollution in the area.

7. ESTOPPEL—COLLATERAL ESTOPPEL—ISSUES LITIGATED.

The doctrine of collateral estoppel provides that only issues actually litigated in a prior litigation are held to have been conclusively decided for purposes of a subsequent action based on a new cause of action.

8. ESTOPPEL—RES JUDICATA—PRIVITY.

*Res judicata* applies only when the parties are the same or in privity with a party to an action in which a valid judgment was rendered.

9. ESTOPPEL—RES JUDICATA—PRIVITY.

A person is a privy for purposes of the doctrine of *res judicata*, where, after a judgment, he has acquired an interest in the subject matter affected by the judgment through a party to that litigation.

10. ESTOPPEL—RES JUDICATA—MUTUALITY OF ESTOPPEL.

The doctrine of *res judicata* operates when there is mutuality of estoppel, that is, both parties must be bound by the prior judgment or neither is bound.

11. ESTOPPEL—RES JUDICATA—BOUNDARIES—MUTUALITY OF ESTOPPEL—PRIVITY.

A prior judgment which established the boundaries of Private

Claim No. 623 was not *res judicata* as to the boundaries of Private Claim No. 599, where claim No. 599 was discussed in the prior judgment only because of its common history and because its westerly boundary was an extension of 623, defendants were neither parties, nor privies of parties, in the prior judgment, and defendants would not have been estopped by the prior judgment regarding 623 had it been contrary to their interests.

12. ESTOPPEL—RES JUDICATA—MOOT ISSUE—EFFECT.

A party to a judgment who cannot obtain an appellate decision because the issue appealed is moot is not barred by that judgment, by the doctrine of *res judicata*, in a subsequent action between the same parties on a different cause of action.

13. BOUNDARIES—ESTOPPEL—RES JUDICATA—APPEAL AND ERROR— MOOT ISSUE.

Boundaries of Private Claim No. 599 were not settled by a prior circuit court decision involving the same parties where the Court of Appeals had affirmed the lower court decision as moot because an amendment to the Great Lakes Submerged Lands Act extended state control to patented as well as to unpatented lands (MCLA 322.701 *et seq.*).

14. BOUNDARIES—NATURAL MONUMENTS—COURSES AND DISTANCES.

Natural monuments prevail over course and distances in establishing boundaries.

15. NAVIGABLE WATERS—GREAT LAKES—SUBMERGED LANDS—TITLE— PUBLIC TRUST.

Title to submerged lands in the Great Lakes is in the state subject to a public trust which is impressed on the lands to protect the navigable waters, to preserve valuable fish and game habitats, and to protect the public's right to fish and boat.

16. NAVIGABLE WATERS—GREAT LAKES—SUBMERGED LANDS—PUBLIC DISPOSITION.

Submerged lands in the Great Lakes may be disposed of only when the Department of Conservation determines that such lands are of no substantial public value for hunting, fishing, swimming, pleasure boating, or navigation and that the general public interest will not be impaired.

17. NAVIGABLE WATERS—GREAT LAKES—SUBMERGED LANDS—LAND-
FILL—PUBLIC'S RIGHTS.

> Enjoining defendants' landfill of submerged contiguous lands in
> Lake St. Clair was proper where the landfill would necessarily
> interfere with the public's rights of boating and fishing on
> the entire lake surface in its natural condition, would diminish
> the lake's size, and the general public's interest would be im-
> paired.

Appeal from Ingham, Jack W. Warren, J. Submitted Division 1 December 9, 1971, at Lansing. (Docket No. 9534.) Decided February 22, 1972.

Complaints by the People of the State of Michigan on relation of Ralph A. MacMullan, Director of the Department of Conservation, against Charles H. Babcock, James Babcock, and against Ralph Reghi and Ruth Reghi, to enjoin defendants' intended landfill of Lake St. Clair. Cases consolidated. Grosse Pointe Woods, Milk River Drainage District, St. Clair Shores, and Harper Woods intervened as defendants. Judgment for plaintiff. Defendants Babcock appeal. Affirmed in part, reversed in part, and remanded with instructions.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Jerome Maslowski,* Assistant Attorney General, for plaintiff.

*Leithauser & Leithauser,* for defendants Babcock.

*Killebrew & Fraser,* for intervening defendant St. Clair Shores.

*Thomas C. Mayer,* for intervening defendant Harper Woods.

Before: McGregor, P. J., and Bronson and Targonski,* JJ.

Bronson, J. Plaintiff filed suit in Ingham County Circuit Court, October 11, 1966, against defendants Babcock, as joint tenants, seeking to enjoin their intended landfill into Lake St. Clair. After a six-day nonjury trial, an opinion was filed February 26, 1970, and judgment was entered on May 8, 1970, granting plaintiff the injunction it sought. Defendants Babcock appeal of right.

At trial, this case was consolidated with the second case, *People, ex rel. Director of Conservation,* v *Reghi,* in which the state also was granted the injunction it sought. Defendants Reghi do not appeal the determination against them.

In May, 1966, this Court decided that an appeal in a similar case between the same two parties was moot because of a then-recent amendment to the Great Lakes Submerged Lands Act, MCLA §§ 322-.701 *et seq.* (Stat Ann 1967 Rev §§ 13.700[1] *et seq.*). See *People, ex rel. Director of Conservation,* v. *Babcock* (1966), 3 Mich App 403. In deciding the case was moot, this Court affirmed a lower court order dissolving a restraining order which had prevented defendants from filling in the land in question since 1955. That decision was based on the Supreme Court's ruling in *Klais* v. *Danowski* (1964), 373 Mich 262.

Subsequent to this Court's opinion in 1966, defendants Babcock, through their attorney, informed plaintiff that they considered the amendments to the Great Lakes Submerged Lands Act to be unconstitutional and that they would proceed to fill a certain section of Lake St. Clair allegedly owned by them.

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Plaintiff then filed the instant suit and was granted a temporary restraining order on October 11, 1966. On November 3, 1966, defendants moved to consolidate the instant case with the *Reghi* case. The grounds for consolidation were that plaintiff's claims in both cases were "substantially the same" and the defendants' answers in both cases "raised the same issues of law". Plaintiff first objected to the said motion, but later withdrew its objections and the cases were consolidated.

On December 6, 1966, the City of St. Clair Shores moved for leave to intervene and filed a cross-complaint in the instant action. It alleged that the proposed landfill would (a) change the city's easterly boundary without its consent, and (b) close off a portion of the bay which was the outlet for the Milk River drain, a combined sewer utilized by the city, thus endangering the health, safety, and welfare of city residents. The motion to intervene was granted. The Milk River Drainage District intervened *only* in the *Reghi* case.[1]

The consolidated cases involved areas of submerged lands contiguous to one another. The instant area is adjacent to Lot 52 of Babcock's Lakeside Subdivision at the southerly boundary of Private Claim No. 599 granted in January, 1810. The area involved in the *Reghi* case is adjacent to Lot 53 at Assessor's Plat No. 7 along the northerly line of Private Claim No. 624 also granted in January, 1810. At trial, both defendants Babcock and defendants Reghi claimed that the adjacent areas submerged under Lake St. Clair were "upland" at the time of the patent grants and now may be reclaimed by landfills. Defendants further claim that any attempt to

---

[1] The City of Grosse Pointe Woods and the City of Harper Woods also intervened in this cause, but their interventions are not relevant to this appeal.

control said reclamation attempts would be unconstitutional without a provision for compensation.

The trial judge entered a single judgment against both defendants Babcock and defendants Reghi. The judgment prohibited the defendants from filling in the disputed land as said fills would interfere with and retard the Milk River's flow resulting in a hazard to the public welfare. The trial judge also found that the land sought to be filled was not within Private Claim No. 599 nor within Private Claim No. 624 and that the defendants could not trace their titles in this land to the original patent grants of 1810.

The defendants' first allegation is that the trial court erred in entering a single judgment in this consolidated case. The thrust of their argument is that as a result of this action, the court erroneously entered judgment in the instant case for the Milk River Drainage District, which was not a party in the Babcock suit.

Plaintiff contends that after consolidation the two cases were treated as one and that it can perceive no reason for entering separate judgments. Further, such action would accomplish nothing of any legal substance.

GCR 1963, 505.1 allows a trial judge to consolidate cases "when actions involving a substantial and controlling common question of law or fact are pending before the court". This frequently occurs in two situations. First, where several actions are pending between the same parties stating claims which could have been brought in separate counts of a single claim. Second, "where several actions are * * * tried together but each retains its separate character and requires the entry of a separate judgment". 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), Rule 505, p 364.

The instant case represents the second situation. This case was consolidated with *Reghi* for the court's convenience in trying the common questions involved in both suits. The comments to the rules make it clear that such a consolidation does not merge the two cases. When a decision is rendered, it is to be rendered separately in each case. The Federal courts have reached the same conclusion as to the Federal rule of consolidation. *National Nut Company of California* v. *Susu Nut Co.* (ND Ill, 1945), 61 F Supp 86, 87.

Plaintiff's argument that no purpose would be served by entering separate judgments ignores the consequences of single judgments; judgments for parties against others not involved in the particular suit. Indeed, that is what happened in this case.

While consolidation is allowed for the obvious administrative savings it brings, it should not be allowed where confusion and prejudice may result. 2B Barron & Holtzoff, Federal Practice & Procedure, Rule 42, § 941, p 177. When cases are consolidated, they keep their separate identities and parties in one action do not become parties to the other, 2 Honigman & Hawkins, *supra,* at 364, and pleadings in one are not pleadings in the other. *MacAlister* v. *Guterma* (CA 2, 1958), 263 F2d 65; *National Nut Company of California* v. *Susu Nut Co., supra.* Where the proofs and arguments are such that it is easy for a judge to lose sight of who the parties in each particular suit are, it is bad practice to grant a consolidation motion. It is obviously prejudicial for a party to find himself saddled with a judgment in favor of another who did not participate in the suit against him. We, therefore, find that the trial judge erred in entering a single judgment in this case and in entering judgment for the Milk River Drainage District against defendants Babcock.

On entry of new judgments, we think it proper for the trial judge to enter judgment for the City of St. Clair Shores against defendants Babcock. St. Clair Shores is partly embraced in the Milk River Drainage District. In its complaint, the city contended that the proposed landfill would interfere with the Milk River Drain.

The only witness called with respect to the drain was called by the drainage district. Dr. Hugo Mendelbaum, on cross-examination by the attorney representing the City of St. Clair Shores, testified that the landfill could interfere with the natural flushing effect caused by the renewal of water passing the channel beside the Babcocks' property, thus rendering pollution problems in the area more probable. This appears to establish legitimate proofs of irreparable harm by a party to the Babcock case. The fact that Dr. Mendelbaum was called by a party to the *Reghi* case is not important. What is, is that defendants Babcock were put on notice of these contentions and that a party to the suit elicited such proofs. This is entirely consistent with the purpose of judicial economy and convenience in consolidated suits. While separate suits retain their identity, proofs in one stand as proofs in the other as to common questions of fact. *Johnson* v. *Manhattan Railway Co.* (1933), 289 US 479 (53 S Ct 721, 77 L Ed 1331); *National Nut Co. of California* v. *Susu Nut Co., supra; Armstrong* v. *Commercial Carriers, Inc.* (1954); 341 Mich 45.

Defendants nevertheless contend that Dr. Mendelbaum's testimony was insufficient to support the trial court's finding that the proposed fill would be a detriment to the health of the communities served by the drain. This argument is posited on the witness's inability to state that the fill would definitely be a

health hazard. The witness did state that he could not see how it could be beneficial.

The statement on which defendants rely was the witness's expert opinion as to the ultimate fact to be decided by the trier of fact. Whether the proposed fill would be detrimental was a fact for the trial judge to ultimately determine. See *Dudek* v. *Popp* (1964), 373 Mich 300. A review of Dr. Mendelbaum's testimony shows sufficient facts from which the trier of fact could determine that the fill would be hazardous. Basically, his testimony revealed that an existing pier in the area was a detriment to the affected communities; that the area's problem stemmed from what appeared to be polluted water coming out of the drain into the bay; that when this water entered the bay its velocity slowed, which could cause sedimentation; and that restricting the flow of water would minimize sedimentation. Finally, in response to a hypothetical question on the effect of the proposed fill, Dr. Mendelbaum testified that it was very possible for this to increase sedimentation and thus increase pollution in the area.

This brings this Court to the crux of this case. The trial judge established the boundaries of Private Claim No. 599 so that Lot 52 of the Babcock Lakeside Subdivision lies outside the claim. Defendants contend that the Supreme Court's decision in *Klais* v. *Danowski, supra,* barred him from doing so. Defendants further argue that the parties stipulated the boundaries of Private Claim No. 599 to be those set in *Klais* and that this stipulation should have bound plaintiff, citing *Feniger* v. *American Railway Express Co.* (1924), 226 Mich 106.

What did *Klais* decide? The question in *Klais* was whether two lots in Private Claim No. 623 were "part of the State-owned, unpatented, submerged

lands of the Great Lakes and, as such, subject to PA 1955, No 247, as amended by PA 1958, No 94 (CLS 1961, § 322.701 *et seq.* [Stat Ann 1958 Rev and Stat Ann 1963 Cum Supp § 13.700(1) *et seq.*])". *Klais, supra,* at 265. Private Claim No. 599 lies adjacent to and south of 623. The state intervened in that case to protect its interest in the submerged lands. The Supreme Court held that the lots in question were within Private Claim No. 623 and that such lands could be reclaimed by successors in title to the original patentees. To arrive at this holding, the Court had to fix 623's boundaries. Since no posts or markers could be found from the original 1810 survey by Aaron Greeley, the Court found the center line of Harper Avenue to be the westerly boundary of 623 and used this to set the other boundaries.

Private Claim No. 599 was involved in *Klais* only because of its common history and because its westerly boundary was an extension of 623's. Defendants rely on the *Klais* discussion of 599 to argue that all its boundaries have been settled.

*Res judicata* bars further action after an original cause of action between two parties goes to judgment. When the subsequent action is based on a new cause of action, the prior litigation is conclusive only as to issues actually litigated. This is the doctrine of collateral estoppel. *Jones* v. *Chambers* (1958), 353 Mich 674; *Jacobson* v. *Miller* (1879), 41 Mich 90. In *Klais,* the questions litigated involved the boundaries of 623 and only incidentally those of 599.

Further, for the doctrine of *res judicata* to apply, the parties must be the same or a privy to a party to an action in which a valid judgment was rendered. One is a privy when he has acquired an interest in the subject matter affected by the judgment, through

a party to the litigation, after the judgment. *Bernhard* v. *Bank of America National Trust & Savings Association* (1942), 19 Cal 2d 807 (122 P2d 892). The Babcocks have no interest in the property in question in *Klais* and cannot be said to be privy to a party to that litigation.

Defendants nevertheless argue that *res judicata* may apply even where the parties are not identical with those of the prior litigation. *Jones* v. *Chambers, supra.* Our Supreme Court, however, has recently held that for *res judicata* to operate there must be mutuality of estoppel. *Howell* v. *Vito's Trucking & Excavating Co.* (1971), 386 Mich 37. In essence, both parties must be bound by the prior judgment or neither is bound. Certainly, the Babcocks would not have been concluded had *Klais* gone contrary to their interests.[2] To hold otherwise would be contrary to the Supreme Court's warning in *Howell, supra.* We would be declaring the state a loser to every landowner along Lake St. Clair who could rely on *Klais* as an indication of where boundary lines are to claim submerged lands without ever having met in an adversary setting.[3] This we decline to do. *Klais* did not determine all the boundaries of Private Claim No. 599.

Defendants next contend that, even so, the question of 599's boundaries was settled by prior circuit

[2] *Jones* v. *Chambers* (1958), 353 Mich 674, is distinguishable. In that case, the plaintiff to the second cause of action was concluded by the judgment in the first cause of action because its rights were derivative of the first plaintiff's. Defendants Babcock's rights are in no way derivative of the parties in *Klais* v. *Danowski* (1964), 373 Mich 262, as they have no interest in Private Claim No. 623.

[3] That such a situation is entirely possible, we need only point to *People, ex rel. Director of Conservation,* v. *Reghi* (1966), 3 Mich App 389, a companion case to *People, ex rel. Director of Conservation,* v. *Babcock* (1966), 3 Mich App 403. The former case involved Private Claim No. 624. The trial judge held that *Klais* v. *Danowski* (1964), 373 Mich 262, established the borders of 624 even though that claim was never mentioned in *Klais.*

court action involving the same parties in 1965. In that suit, the trial judge, relying on *Klais*, held that defendants had good title to the land in question. We would be inclined to agree[4] except for the fact that this Court affirmed the first litigation as moot because of a then-recent amendment to Great Lakes Submerged Lands Act, MCLA § 322.701 *et seq.* (Stat Ann 1967 Rev § 13.700[1] *et seq.*). See *People, ex rel. Director of Conservation,* v. *Babcock* (1966), 3 Mich App 403.[5]

The question of what effect an appellate court's determination that an issue is moot has on a subsequent cause of action between the same parties has never been decided in this state. The general rule, which we adopt, is that "Where a party to a judgment cannot obtain the decision of an appellate court because the matter * * * is * * * moot, the judgment is not conclusive against him in a subsequent action on a different cause of action". *Minor* v. *Lapp* (1963), 220 Cal App 2d 582, 584 (33 Cal Rptr 864, 865). See, also, *LaSalle National Bank* v. *City of Chicago* (1954), 3 Ill 2d 375 (121 NE2d 486); *Case* v. *Rewerts* (1957), 15 Ill App 2d 1 (145 NE2d 251). That being the case here, we find that the prior circuit court action is not conclusive against the state. The trial judge in the instant action was thus able to define and locate the boundaries of Private Claim No. 599. He was not bound to follow *Klais* or the prior circuit court judgment.

The finding which defendants object to is that:

"[T]he northerly portion of Lot 52 of Babcock's Lakeside Subdivision lies outside the patent to

---

[4] Ordinarily, the fact that a judgment is erroneous will not prevent *res judicata* from operating. *Johnson* v. *Haley* (1959), 357 Mich 411.

[5] *Babcock* was decided on the principle set forth in *People, ex rel. Director of Conservation,* v. *Reghi* (1966), 3 Mich App 389.

Private Claim 624 and was not included within the patent to either Private Claim 599 or 624. Private Claim 599 involves no land east of the Milk River as it existed in 1810. It follows then that there can be no valid tracing of title to Lot 52 back to the legal heirs of James Abbott, to whom Private Claim 599 was conveyed."

To reach this finding, the trial judge tied his description of claim 599 to that of claim 624 rather than that of claim 623. All three claims were originally laid out in an 1810 survey by Aaron Greeley. Greeley commenced each claim description "at a post standing on the border of Lake St. Clair", and then proceeded clockwise. In *Klais,* the Supreme Court had little difficulty concluding that the westerly border of 599 was an extension of 623's westerly border. See 373 Mich at 266. However, the Supreme Court could not establish the westerly border with any precision and so concluded that the center line of Harper Avenue, the accepted border for over 100 years, was the westerly border set by Greeley.

In the instant case, the trial judge had the benefit of proofs relating to Private Claim No. 624. There was testimony that the markers for the northwest and southwest corners to the rear concession to Private Claim No. 624 have been located. Since the rear concession and Private Claim No. 624 shared a common boundary, the judge was able to determine the exact location of 624; the westerly boundary being the center line of Harper Avenue. Following this description, it is found that the outlet to the Milk River is close to the position accorded it by Greeley in 1810 and that Lake St. Clair's shoreline has been altered little with respect to 624 since 1810.

Once claim 624 is established, the position of a "post standing on the west border of the Milk River" is ascertained. This is the common marker used by

Private Claims 624 and 599. This enabled the trial judge to set the boundaries of 599 with precision.[6]

If the trial judge had laid out 599 in accordance with *Klais,* the common post on the west border of the Milk River would have served to pull the entire description of Private Claim 624 out into Lake St. Clair, leaving a 50.8-acre gap between the claim and its rear concession.

The trial judge was therefore correct in holding that the land in question lies outside Private Claim No. 599 and that the defendants could not trace title in this land to the original patentee. He correctly based his opinion on the legal concept that natural monuments prevail over courses and distances. By finding as he did, the trial judge has effectively foreclosed landowners north of Private Claim No. 623 and south of Private Claim No. 599 from erroneously claiming ownership of submerged lands in Lake St. Clair.

Defendants allege that they have riparian rights in the submerged contiguous lands, citing *Fletcher v. The Thunder Bay River Boom Co.* (1883), 51 Mich 277. This, however, is not the law with respect to submerged lands in the Great Lakes. Title to these lands is in the state subject to a public trust. *State v. Venice of America Land Co.* (1910), 160 Mich 680.

The trust impressed on these lands is for the protection of our navigable waters, the preservation

---

[6] The fact that the trial judge was able to ascertain the exact location of Private Claim No. 599 with precision based on the location of natural monuments suggests another reason *res judicata* should not operate in this case. The estoppel of a judgment extends only to the facts in issue as they existed at the time judgment was rendered and does not prevent a reexamination of the same questions where facts have changed or occurred which may alter the litigants' legal rights and relations. *In re Raseman Estate* (1969), 18 Mich App 91, 105. As the Court said in that case at 104:

"The doctrine of *res judicata* is not immutable. It reflects a policy of law which seeks to end litigation, but it is only a policy, not an absolute rule, and it need not be and has not been applied rigidly without regard to disparate factual situations."

of valuable fish and game habitat, and assurance of the public's right to fish and boat in the subject area. See *Collins* v. *Gerhardt* (1926), 237 Mich 38.

The importance of this trust is recognized by the People of Michigan in our Constitution. Article 4, § 52 of the Constitution of 1963 declares:

"The conservation and development of the natural resources of the state are hereby declared to be of paramount public concern in the interest of the health, safety and general welfare of the people. The legislature shall provide for the protection of the air, water and other natural resources of the state from pollution, impairment and destruction."

When lands are owned by the state for the public trust, it is the state's duty to protect the trust and not surrender the rights thereto. *People, ex rel. Director of Conservation,* v. *Broedell* (1961), 365 Mich 201. It is thus the public policy of this state with respect to submerged lands in the Great Lakes that they may be disposed of only when the Department of Conservation determines that such lands are of no substantial public value for hunting, fishing, swimming, pleasure boating, or navigation and that the general public interest will not be impaired. *Obrecht* v. *National Gypsum Co.* (1960), 361 Mich 399. There has been no such finding here. The action which defendants seek to take will necessarily interfere with the public's rights of boating and fishing on the entire surface of the lake in its natural condition. The size of the lake would be diminished. What defendants desire to do is understandable but they may not accomplish their objectives by invading the public trust.

The importance of protecting our natural resources for the public's enjoyment has been brought into sharp focus by the ecology movement. These

are precious assets to be preserved for present and future generations. This is an appropriate opportunity to reiterate the language used by Justice Holmes and reiterated by Michigan Supreme Court Justice Eugene Black:

" 'This public interest is omnipresent wherever there is a State, and grows more pressing as population grows. It is fundamental, and we are of opinion that the private property of riparian proprietors cannot be supposed to have deeper roots. Whether it be said that such an interest justifies the cutting down by statute, without compensation, in the exercise of the police power, of what otherwise would be private rights of property, or that apart from statute those rights do not go to the height of what the defendant seeks to do, the result is the same. * * * The private right to appropriate is subject not only to the rights of lower owners but to the initial limitation that it may not substantially diminish one of the great foundations of public welfare and health.'

"The supreme court held further in this case that a State has constitutional power to insist that its natural advantages shall remain unimpaired, and that when that State 'finds itself in possession of what all admit to be a great public good,' it may as against such asserted claim of a riparian retain what it has 'and give no one a reason for its will.' " *Obrecht* v. *National Gypsum Co., supra,* at 414–415, quoting from *Hudson County Water Co.* v. *McCarter* (1908), 209 US 349 (28 S Ct 529, 52 L Ed 828, 14 Ann Cas 560).

Affirmed in part, reversed in part and remanded for entry of judgment in accord with this opinion.