# STATE OF MICHIGAN

# COURT OF APPEALS

---

GEORGE ZIVKU,

       Plaintiff-Appellee,

v

BRIAN ANTHONY JAMES and
VERLIN GOOD MARTIN,

       Defendant-Appellants.

UNPUBLISHED
November 20, 2018

No. 341106
Sanilac Circuit Court
LC No. 15-36464-NI

---

Before: SERVITTO, P.J., and STEPHENS and BOONSTRA, JJ.

PER CURIAM.

Defendants appeal by right the trial court's judgment entered following a jury verdict in favor of plaintiff and against defendants in the amount of $350,000. We vacate the judgment, reverse the trial court's denial of defendants' motion for a new trial, and remand for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises out of a July 12, 2014 automobile accident. Plaintiff was a passenger in a vehicle driven by Ioan Mascas. Mascas's vehicle was struck from behind by a vehicle driven by defendant Brian James (James) and owned by defendant Verlin Martin (Martin).

Plaintiff filed suit, alleging negligence by both defendants, and additionally alleging owner's liability, vicarious liability, and negligent hiring, retention, and supervision as to Martin. Mascas filed a separate suit against defendants. Defendants answered plaintiff's complaint on January 28, 2016. On June 13, 2016, plaintiff, Mascas, and defendants stipulated to consolidating the two cases for discovery purposes only.

Defendants subsequently moved to consolidate the cases for trial. Visiting Judge Fred L. Borchard orally granted the motion at a hearing held on February 27, 2017,[1] and the trial court

---

[1] The case was assigned to Judge Donald A. Teeple. It is unclear from the record why Judge Borchard presided over the hearing.

-1-

issued a written order on March 2, 2017 consolidating the cases for trial. The order stated that the court would "determine whether to impanel one or two juries at a later date as trial nears." Neither plaintiff nor Mascas moved for reconsideration of this order or sought to take an interlocutory appeal from it.

On April 3, 2017, plaintiff moved to separate the cases for trial. Judge Teeple heard oral argument on April 17, 2017 and orally granted the motion on that date.[2] On April 24, 2017, defendants filed a notice of nonparty at fault under MCR 2.112(K) in plaintiff's case, naming Mascas as a nonparty who was wholly or partially at fault for the accident. On May 8, 2017, plaintiff moved to strike defendants' notice as untimely, because it was filed more than 91 days after defendants filed their first responsive pleading. See MCR 2.112(K)(3). At a hearing held on plaintiff's motion, defendants admitted that they had not filed a notice within 91 days of their answer to plaintiff's complaint, but argued that the recent separation of the cases for trial was sufficient new information on which to base a notice of nonparty at fault. The trial court disagreed and granted plaintiff's motion to strike defendants' notice.

Trial on plaintiff's claims commenced on August 1, 2017. At trial, plaintiff elicited lengthy testimony from Michigan State Police Sergeant Ted Stone concerning his reconstruction of the accident. Defendants objected to this testimony for several reasons, including that Sergeant Stone had never been designated as an expert witness. The trial court overruled the objection and allowed Sergeant Stone to testify regarding whether James had "failed to stop in an assured clear distance," stating "I don't think that requires an expert." Sergeant Stone subsequently testified at length about his training and experience as a "crash reconstructionist" and the steps he took to gather data about the accident in this case, including his retrieval of the Event Data Recorders (EDRs) from the two vehicles. He characterized an EDR as "a computer board with an algorithm that is, it's whose [sic] job it is to determine, do we need to fire airbags . . . or not." In order to do that effectively, Sergeant Stone testified, an EDR would record "historical data" of a car's speed in the last few seconds before a crash. Sergeant Stone then testified about how he had retrieved and analyzed the data from both vehicles, including testimony regarding calculations and interpretations he performed on the data. He opined that he "could find nothing illegal in the actions of the Toyota [driven by Mascas]" and that "for whatever reason [James] . . . didn't react in what we'd call in [sic] a prudent manner and impacted the back of the Toyota." Sergeant Stone also testified, based on his training and experience as a crash reconstructionist, to his conclusion that the vehicle driven by James was travelling at 55 miles per hour at the time it impacted Mascas's vehicle. The EDR from James's vehicle had recorded a speed of 26 miles per hour just before the crash; however, Sergeant Stone testified that he believed this reading to be an "anomaly" and an "errant speed," and that he had discarded that number in conducting his analysis.

At the close of proofs, both plaintiff and defendants moved for a directed verdict; the trial court directed a verdict in plaintiff's favor regarding whether James was negligent and whether plaintiff had suffered a threshold bodily injury. The trial court characterized Sergeant Stone's

---

[2] The trial court entered a written order granting the motion on April 27, 2017.

testimony as "very persuasive" with regard to James' negligence. It further found that James had violated the assured clear distance statute[3] without a legal excuse.

The jury returned a verdict in plaintiff's favor as described. The trial court subsequently denied defendants' motion for a new trial. This appeal followed.

## II. SERGEANT STONE'S TESTIMONY

Defendants argue that the trial court erred by allowing Sergeant Stone to testify that James' vehicle had violated the assured clear distance statute. Defendants maintain that the testimony was improper because it was expert witness testimony, because Sergeant Stone was never designated as an expert witness on any witness list, and because the trial court never qualified him as an expert. We agree. Counsel for defendants objected to Sergeant Stone's testimony on the ground that the testimony was impermissible expert witness testimony, thereby preserving this issue for appeal. We review for an abuse of discretion a trial court's qualification of a witness as an expert and the admissibility of his testimony. *Surman v Surman*, 277 Mich App 287, 304-305; 745 NW2d 802 (2007). We review de novo underlying issues of law, such as the interpretation of statutes and court rules. *Barr v Farm Bureau Gen Ins Co*, 292 Mich App 456, 458; 806 NW2d 531 (2011). We review for an abuse of discretion a trial court's decision regarding discovery sanctions. *Traxler v Ford Motor Co*, 227 Mich App 276, 286; 576 NW2d 398 (1998). We also review for an abuse of discretion a trial court's decision to grant or deny a new trial. See *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 761; 685 NW2d 391 (2004).

MRE 702 provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The admission of expert testimony requires that: (1) the witness be an expert; (2) there are facts in evidence that require or are subject to examination and analysis by a competent expert; and (3) the knowledge is in a particular area that belongs more to an expert than to the common man. *Surman*, 277 Mich App at 125. The testimony, including the data underlying the expert's theories and the methodology by which the expert draws conclusions, must also be reliable. See *Gilbert*, 470 Mich at 779. The party proffering the expert bears the burden of persuading the

---

[3] MCL 257.402(a) provides in relevant part: "In any action, in any court in this state when it is shown by competent evidence, that a vehicle traveling in a certain direction, overtook and struck the rear end of another vehicle proceeding in the same direction, or lawfully standing upon any highway within this state, the driver or operator of such first mentioned vehicle shall be deemed prima facie guilty of negligence."

trial court that the expert has specialized knowledge that will aid the factfinder in understanding the evidence or determining a fact in issue and the reliability of the expert's methods. *Dep't of Environmental Quality v Waterous, Inc*, 279 Mich App 346, 381; 760 NW2d 856 (2008); see also *Craig v Oakwood Hosp*, 471 Mich 67, 80, 83; 684 NW2d 296 (2004).

In contrast to expert witnesses, lay witnesses may only give opinion testimony that is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." MRE 701.

Here, the trial court never qualified Sergeant Stone as an expert. Initially, Sergeant Stone gave unobjectionable lay witness testimony related to his response to the scene of the accident and his observations. Plaintiff's counsel then asked Sergeant Stone if he had made "any determinations on whether or not the driver of the truck failed to stop in a cleared assure [sic] distance." Defendants' counsel objected on the ground that Sergeant Stone was a "fact witness" (lay witness) and not an expert witness. The following colloquy then took place:

> *THE COURT*: Has this witness been listed as an expert witness?
>
> *MR. CUMMINGS [Plaintiff's Counsel]*: He is an expert witness, Judge, he's a reconstructionist. He did the full reconstruction of the scene, it's not just normal type UD-10 based on hearsay.
>
> *THE COURT*: So are you asking that he be allowed to give opinion testimony?
>
> *MR. CUMMINGS*: Yes.
>
> *THE COURT*: Your response?
>
> *MR. CONCANNON [Defendants' Counsel]:* He's a fact witness. I don't believe he was listed as an expert witness, Your Honor. He's a fact witness and should just talk about what he observed. He's not here to draw conclusions for the jury.
>
> *THE COURT*: Well, that's the first question. Was he listed as an expert witness?
>
> *MR. CUMMINGS:* I don't believe I differentiated between experts and fact witnesses; it's just on the list of witnesses.
>
> &ast; &ast; &ast;
>
> *THE COURT:* All right. So what question do you wish to ask him?
>
> *MR. CUMMINGS:* The question I had just asked is whether or not, or if he determined whether or not the truck driver failed to stop in an assured clear distance.

-4-

*THE COURT*: Okay. Overruled, I don't think that requires an expert.

Notwithstanding the trial court's ruling, Sergeant Stone's subsequent, extensive testimony was clearly expert testimony. The testimony included his experience, training, and credentials as a crash reconstructionist, an explanation of what an EDR is and how it works, discussion of his analysis of the EDR data (including why he discounted a particular data point as anomalous), discussion of his use of his training in physics and mathematical equations to arrive at various conclusions, and his ultimate opinion that Mascas' car did "nothing illegal" while James's car failed to stop in the assured clear distance. This testimony concerned an area of expertise that the average juror could not have been expected to possess, *Surman*, 277 Mich App at 308, but rather was "specialized knowledge" designed to assist the jury in understanding the evidence or determining a fact in issue. *Waterous, Inc*, 279 Mich App at 381; Cf. *People v Petri*, 279 Mich App 407, 416; 760 NW2d 882 (2008) (holding that a police detective's testimony regarding the behavior of child sex abusers was not expert testimony because the detective did not offer "a technical or scientific analysis."). Sergeant Stone's testimony thus was expert testimony, and we will analyze defendants' challenges to its admission as such. For the following three reasons, we hold that the trial court abused its discretion by admitting Sergeant's Stone's expert testimony.

## A. SERGEANT STONE WAS NOT DESIGNATED AS AN EXPERT WITNESS ON ANY WITNESS LIST

Defendants first argue that Sergeant Stone's expert testimony should not have been permitted because Sergeant Stone did not appear on any witness list as an expert witness and because they were therefore surprised and prejudiced by his expert testimony. We conclude that the trial court should have considered an appropriate discovery sanction, potentially including the barring of Sergeant Stone's expert testimony.

Witness lists are an element of discovery. *Grubor Enterprises, Inc v Kortidis*, 201 Mich App 625, 628; 506 NW2d 614 (1993). The purpose of witness lists is to avoid "trial by surprise." *Id*. (citation omitted). To that end, MCR 2.401(I) provides in relevant part:

(1) No later than the time directed by the court under subrule (B)(2)(a),[4] the parties shall file and serve witness lists. The witness list must include:

(a) the name of each witness, and the witness' address, if known; however, records custodians whose testimony would be limited to providing the foundation for the admission of records may be identified generally;

(b) whether the witness is an expert, and the field of expertise.

---

[4] MCR 2.401(B)(2)(a) provides time periods for the entry of a scheduling order.

(2) The court may order that any witness not listed in accordance with this rule will be prohibited from testifying at trial except upon good cause shown.

Although plaintiff's counsel stated that he did not differentiate between expert and fact witnesses on his witness list, the trial witness list filed by plaintiff's counsel on July 24, 2017 did designate several witnesses as experts; Sergeant Stone was not among them. And plaintiff's counsel's witness list filed during the discovery period also designated particular witnesses as expert witnesses. Both lists included Tim Robbins, who was listed as an expert in "Accident Reconstruction and Police Investigation," but who did not testify at trial. Sergeant Stone was not designated as an expert witness, and was only listed as one of three specifically named "employees of the Michigan State Police Department, possessing knowledge of this matter." The scheduling order entered in this case established a deadline for the disclosure of expert witnesses; plaintiff's expert witnesses were to be disclosed by July 25, 2016. The order also contained the admonition that "WITNESSES NOT SO NAMED SHALL NOT BE PERMITTED TO TESTIFY EXCEPT ON GOOD CAUSE."

The first time Sergeant Stone was disclosed as an expert witness was at trial. Plaintiff's counsel did not disclose that Sergeant Stone would be giving expert witness testimony on any pretrial witness list—at best, his trial witness list did not *exclude* the possibility that Sergeant Stone was an expert witness. A reasonable reading of the witness list filed in accordance with the scheduling order, however, would lead to a conclusion that Sergeant Stone was a fact witness, not an expert witness. The trial court therefore potentially could have, in the exercise of its discretion, sanctioned plaintiff's counsel for a discovery violation, including barring the testimony of Sergeant Stone as an expert witness. *Duray Dev, LLC v Perrin*, 288 Mich App 143, 164; 792 NW2d 749 (2010), citing *Dean v Tucker*, 182 Mich App 27, 32; 451 NW2d 571 (1990). In considering a discovery sanction, the trial court should give "careful consideration" to the following, nonexclusive, list of factors:

(1) whether the violation was wilful or accidental; (2) the party's history of refusing to comply with discovery requests (or refusal to disclose witnesses); (3) the prejudice to the defendant; (4) actual notice to the defendant of the witness and the length of time prior to trial that the defendant received such actual notice; (5) whether there exists a history of plaintiff's engaging in deliberate delay; (6) the degree of compliance by the plaintiff with other provisions of the court's order; (7) an attempt by the plaintiff to timely cure the defect[;] and (8) whether a lesser sanction would better serve the interests of justice. This list should not be considered exhaustive. [*Duray*, 288 Mich App at 165 (citation omitted, alterations in original).]

Here, the trial court did not consider any of the above factors, because it did not recognize that Sergeant Stone's testimony would be that of an expert; the trial court also appeared to accept plaintiff's counsel's inaccurate characterization that witnesses were not designated as experts on his witness list. We conclude that the trial court abused its discretion by failing to consider a discovery sanction potentially including the barring of the expert testimony (but not the lay testimony) of Sergeant Stone. Defendants were not notified until the first day of trial that Sergeant Stone would provide expert testimony on crash reconstruction and his analysis of the data retrieved from the vehicles' EDRs. Although arguably forewarned that they would have to

contend with expert testimony from Robbins on similar matters, defendants were not able to prepare specifically for Sergeant Stone's expert testimony. This litigation stretched out over nearly two years; plaintiff's counsel had plenty of time to amend his pretrial witness list to designate Sergeant Stone as an expert witness. In light of the above facts, we conclude that the trial court should have considered an appropriate discovery sanction, potentially including the barring of Sergeant Stone's expert testimony. *Duray*, 288 Mich App at 164.

## B. SERGEANT STONE WAS NEVER QUALIFIED AS AN EXPERT, NOR WERE HIS DATA AND METHODOLOGY DETERMINED TO BE RELIABLE

Because the trial court erroneously determined that plaintiff's counsel's questioning of Sergeant Stone did not require expert testimony, it never made any findings regarding whether Sergeant Stone was qualified to testify as an expert witness and whether the data and methodology underlying his opinion were reliable. By failing to do so, the trial court abandoned its "gatekeeper role" under MRE 702. *Gilbert*, 470 Mich at 779.

"MRE 702 has imposed an obligation on the trial court to ensure that any expert testimony admitted at trial is reliable. While the exercise of this gatekeeper role is within a court's discretion, a trial judge may neither 'abandon' this obligation nor 'perform the function inadequately.'" *Gilbert*, 470 Mich at 780, quoting *Kumho Tire Co Ltd v Carmichael*, 526 US 137, 156-159; 119 S Ct 1167; 143 L Ed 2d 238 (1999) (SCALIA, J., concurring). This obligation is "reinforced" by MRE 104(a), which provides that preliminary questions concerning the qualification of a witness shall be determined by the court before trial. *Gilbert*, 470 Mich at 781. MRE 104 therefore requires the trial court to address the requirements of MRE 702 *before* admitting expert testimony. *Id*. Further, "MRE 702 mandates a searching inquiry, not just of the data underlying expert testimony, but also of the manner in which the expert interprets and extrapolates from those data." *Id*. at 782.

Here, the trial court determined that Sergeant Stone's testimony would not be that of an expert. As discussed, because this testimony was based on specialized knowledge and was technical and scientific, the trial court's determination was erroneous. Cf. *Petri*, 279 Mich App at 416. This error resulted in the trial court failing to conduct any inquiry into the reliability of the data underlying Sergeant Stone's analysis and the methodology he employed to interpret the data. *Gilbert*, 479 Mich at 781-782.

A police officer may be qualified as an expert on the basis of experience or training. See, e.g., *Petri*, 279 Mich App at 416. Sergeant Stone did briefly testify that he was trained to retrieve data from EDRs and to interpret the data, stating that he had taken a "technician course" and an "analyst course" related to gathering data from an EDR and interpreting it. He also testified that he had "close to 1500 hours" of classroom training in "many different venues" as well as "a tremendous amount of in house training," and had reconstructed "hundreds if not thousands" of crashes. However, Sergeant Stone also testified that his formal education consisted of a Bachelor of Science degree in Resource Management, and specifically denied being either an engineer or mathematician. In fact, Sergeant Stone agreed that he did not have expertise in either engineering or mathematics. Yet Sergeant Stone testified to performing mathematical calculations and analyzing data in the context of "the realm of physics."

On this record and for several reasons, we are not persuaded that we should conclude in this case, as the *Petri* court concluded in the context of a failure to qualify a detective as an expert in the behavior of child sex abusers, that the trial court's error was harmless. *Petri*, 279 Mich App at 416. First, unlike in *Petri*, the testimony at issue in this case was clearly expert testimony of a "technical and scientific" nature; the *Petri* court held to the contrary that the testimony in that case was lay testimony; it only stated, as additional support for its holding, that even assuming the testimony was that of an expert, it believed that the detective could be qualified. *Id*. Second, the defendant in *Petri* never objected to the admission of the detective's testimony and essentially waived his opportunity to voir dire the detective on his qualifications; here, defendants objected to Sergeant Stone's testimony and the trial court ruled that it was not expert testimony. Defendants could have reasonably expected that any further objection on the ground of Sergeant Stone's qualifications as an expert would be futile. Attorneys are generally not required to make futile objections. *People v Urgan*, 321 Mich App 198, 213; 908 NW2d 564 (2017). Third, Sergeant Stone gave some testimony that cut against his qualification as an expert, such as his statement denying expertise in mathematics. Fourth, the *Petri* court described the detective's testimony as "brief" and stated, as yet another ground in support of affirmance, that in any event the detective's brief testimony had no reasonable probability of affecting the outcome of the defendant's trial. *Id*. at 417. Here, Sergeant Stone's testimony was quite extensive; further, it was explicitly the basis for the trial court's grant of a directed verdict in favor of plaintiff on the issue of James' negligence. Finally, although Sergeant Stone provided some testimony regarding the functioning of EDRs and the methods he used to interpret the data, the trial court never performed the kind of "searching inquiry" required by MRE 702. *Gilbert*, 470 Mich at 782. For these reasons, we decline to declare in the first instance that Sergeant Stone could have been qualified as an expert (in which case the trial court's error may have been harmless).

We offer no opinion regarding whether Sergeant Stone could be qualified as an expert in the fields of accident reconstruction and interpretation of EDR data. But here, he was not determined to be so qualified, nor did the trial court rule on the reliability of the data and methodology underlying his conclusions. And Sergeant Stone's testimony was explicitly referred to by the trial court in granting plaintiff's motion for a directed verdict—in fact, the trial court stated that Sergeant Stone's testimony showed that James's vehicle was still going 55 miles per hour when it struck Mascas's vehicle and that James violated the assured clear distance statute without legal excuse.[5] Under these circumstances, we conclude that the admission of Sergeant Stone's expert testimony, without qualification under MRE 702, was an abuse of discretion that was not harmless. *Surman*, 277 Mich App at 304-305.

---

[5] Violation of the assured clear distance statute without legal excuse is negligence per se. *Vander Laan v Miedema*, 385 Mich 226, 231; 188 NW2d 564 (1971).

## C. SERGEANT STONE'S TESTIMONY CONTAINED IMPERMISSIBLE LEGAL CONCLUSIONS

Finally, even if the Sergeant Stone had been qualified as an expert and the reliability of his data and methodology had been established, the trial court erred by allowing Sergeant Stone to testify to a legal conclusion. Specifically, Sergeant Stone testified that James had failed to stop within an assured clear distance. Further, in response to plaintiff's counsel's inquiry about whether he had made any determination of causation, Sergeant Stone testified that James "didn't react in what we'd call in a prudent manner" and that he could find "nothing illegal in the actions" of the car driven by Mascas.

Expert testimony may address an ultimate issue to be decided by the trier of fact. MRE 704; *Freed v Salas*, 286 Mich App 300, 337; 780 NW2d 844 (2009). However, an expert may not opine on legal conclusions, such as "a party's negligence or nonnegligence," "because doing so would invade the province of the jury" by telling the jury how to decide the case. *Carson Fischer Potts and Hyman v Hyman*, 220 Mich App 116, 123; 559 NW2d 54 (1996). An expert also may not give testimony regarding "a question of law, because it would invade the exclusive responsibility of the trial court to find and interpret the law." *Id*. Sergeant Stone's testimony included his opinion on the negligence and nonnegligence of the two drivers involved in the accident, as well as his opinion that MCL 257.402(a) had been violated by James. These opinions invaded the province of both the jury and the trial court, and were inadmissible. *Id*. at 123.

## D. CONCLUSION

For these reasons, we conclude that the trial court erred by admitting Sergeant Stone's expert testimony, that the error was not harmless, and that a remand for a new trial is required.[6] Accordingly, we vacate the judgment and reverse the trial court's denial of defendants' motion for a new trial.

## III. MOTION TO STRIKE NOTICE OF NONPARTY AT FAULT

Defendants argue that the trial court erred by granting plaintiff's motion to strike their notice of nonparty at fault. We disagree. We review for an abuse of discretion a trial court's decision on a motion to strike. *Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 469; 666 NW2d 271 (2003). We review de novo the interpretation of statutes and court rules. *Barr*, 292 Mich App at 458.

---

[6] Because we are remanding for a new trial on this basis, we do not address defendants' argument that Sergeant Stone's testimony contained inadmissible hearsay.

MCR 2.112(K) provides in relevant part:

(2) *Notice Requirement.* Notwithstanding MCL 600.6304[7], the trier of fact shall not assess the fault of a nonparty unless notice has been given as provided in this subrule.

(3) *Notice.*

(a) A party against whom a claim is asserted may give notice of a claim that a nonparty is wholly or partially at fault. A notice filed by one party identifying a particular nonparty serves as notice by all parties as to that nonparty.

(b) The notice shall designate the nonparty and set forth the nonparty's name and last known address, or the best identification of the nonparty that is possible, together with a brief statement of the basis for believing the nonparty is at fault.

(c) The notice must be filed within 91 days after the party files its first responsive pleading. On motion, the court shall allow a later filing of the notice on a showing that the facts on which the notice is based were not and could not with reasonable diligence have been known to the moving party earlier, provided that the late filing of the notice does not result in unfair prejudice to the opposing party.

Unambiguous statutory language should be given its plain meaning. *McCormick v Carrier*, 487 Mich 180, 192; 795 NW2d 517 (2010). MCR 2.112(K)(3)(c) requires a party to file a notice of nonparty at fault within 91 days after its first responsive pleading, or show the court that the facts on which the notice is based were not and could not reasonably have been discovered within that time. Defendants admit, and the trial court recognized, that they did not file such a notice within 91 days after their first responsive pleading. Defendants' argument that they could not have known that they needed to file such a notice until the cases were separated for trial is unpersuasive; the cases were not consolidated *at all* until the entry of the June 13, 2016 order consolidating the cases for discovery purposes only; this occurred more than five months after the filing of defendants' January 29, 2016 answer to plaintiff's complaint. Even assuming that plaintiff and James were both parties to a single case after that consolidation (for discovery), defendants had already by then missed by a wide margin the time period specified in MCR 2.112K(3). The trial court did not abuse its discretion by granting defendants' motion to strike the notice. *Belle Isle Grill Corp*, 256 Mich App at 469.

---

[7] MCL 600.6304 provides for the determination of comparative fault in personal injury actions where more than one person is at fault. See *Vandonkelaar v Kid's Kourt, LLC*, 290 Mich App 187, 199-201; 800 NW2d 760 (2010).

## IV. MOTION TO SEPARATE CASES FOR TRIAL

Finally, defendants argue that the trial court erred by granting plaintiff's motion to separate the cases for trial, contrary to the earlier order consolidating the cases for trial. We disagree. We review for an abuse of discretion a trial court's decision to grant separate trials. *LeGendre v Monroe Co*, 234 Mich App 708, 719; 600 NW2d 78 (1999). We review de novo the interpretation of court rules. *Barr*, 292 Mich App at 458.

MCR 2.505(B) provides that "[f]or convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, the court may order a separate trial of one or more claims, cross-claims, counterclaims, third-party claims, or issues." The trial court held in this case that there were "separate injuries, different witnesses, different defenses, all kinds of things that would make a joint trial extremely confusing," and that a consolidated trial would be "substantially longer" than two separate trials. Therefore, separate trials were appropriate in plaintiff's and Mascas' cases. The trial court's reasoning supports its order of separate trials under this court rule.

Defendants do not dispute the trial court's holding under the court rule. Instead, defendants argue that the trial court erred by entertaining plaintiff's motion at all, because (1) the motion was really a motion for reconsideration of the March 2, 2017 consolidation order, (2) it was filed outside the time period provided in MCR 2.119(F)(1) and therefore was untimely, and (3) Judge Teeple failed to make a finding that Judge Borchard was "unavailable or unable to act" and therefore lacked the ability to set aside the order to consolidate the cases for trial.[8] We disagree.

We conclude that ordering separate trials in an earlier-consolidated case was within the trial court's authority under MCR 2.505. MCR 2.505(A) permits a trial court to order that cases be consolidated when they share "a substantial and controlling common question of law or fact." MCR 2.505(B) permits a trial court to order a separate trial of "one or more claims, cross-claims, counterclaims, third-party claims, or issues" for convenience, to avoid prejudice, or when "separate trials will be conducive to expedition and economy." We do not read these two sections as being in conflict, such that a trial court ordering separate trials under subsection (B) is necessarily "setting aside" an earlier order consolidating cases for trial. In fact, a trial court abuses its discretion by failing to order separate trials in a consolidated case when a party is "materially prejudiced" by the risk of jury confusion. See *Jackson v Trogan*, 364 Mich 148, 158; 110 NW2d 612 (1961) (discussing MCR 2.505's predecessor court rule and concluding that the actions for personal injury by a driver and passenger of a car against the operate of another

---

[8] Plaintiff's motion was entitled "Plaintiff's motion to set aside order for consolidation of trial dated March 2, 2017" and sought relief under MCR 2.612, which provides for the grant of relief from judgments, orders, or proceedings. Nonetheless, it is clear from the record, based on the substance of plaintiff's arguments, that Judge Teeple treated the motion as one for separate trials under MCR 2.505(B). A trial court is not bound by the labels parties choose for their motions. *Lierberman v Orr*, 319 Mich App 68, 77 n 4; 900 NW2d 130 (2017).

-11-

vehicle should not have been consolidated "for convenience" and remanding for separate trials of the plaintiffs' claims); see also *Bordeaux v Celotex Corp*, 203 Mich App 158, 163-164; 511 NW2d 899 (1993) (stating that "[c]onsolidation should not be ordered if the substantial rights of a party would be adversely affected or if juror confusion would result."). We see nothing in this court rule or our case law requiring a trial court to treat a later motion for separate trials as one for reconsideration or rehearing of an earlier consolidation order.

Further, plaintiff's motion in this case was filed 32 days after the consolidation order was entered. Although this was outside the time period specified by MCR 2.119(F)(1), a trial court is not necessarily divested of its discretion to consider untimely motions for rehearing. Under MCR 2.604(A), which is expressly referenced in MCR 2.119(F)(1), a non-final order in a case "is subject to revision before entry of final judgment adjudicating all the claims and the rights of the parties." "The court rules therefore give the trial court explicit procedural authority to revisit an order while the proceedings are still pending and, on that reconsideration, to determine that the original order was mistaken . . . ." *Hill v City of Warren*, 276 Mich App 299, 307; 740 NW2d 706 (2007). This Court has explicitly recognized the trial court's discretion to accept untimely motions for reconsideration. See *Bers v Bers*, 161 Mich App 457, 462; 411 NW2d 732 (1987); *Smith v Sinai Hosp of Detroit*, 152 Mich App 716, 723; 394 NW2d 82 (1986). Therefore, even if plaintiff's motion was a motion for reconsideration that was filed 11 days late, the trial court still had the discretion to consider it.

We also disagree that Judge Teeple erred by failing to make a finding that Judge Borchard was "unavailable" under MCR 2.613(B) because, as discussed, we do not view the order granting separate trials as necessarily "setting aside" or correcting an error in the previous consolidation order. The trial court never stated or implied that it was granting plaintiff's motion under MCR 2.612, but rather made statements consistent with ordering separate trials under MCR 2.505(B). Further, we note that, although Judge Borchard presided over the hearing on defendants' consolidation motion and orally granted defendant's motion, the order reflects what appears to be Judge Teeple's signature.[9] In any event, because the consolidation order was not "set aside or vacated," we find defendants' argument under MCR 2.613(B) unpersuasive.

Finally, even if the trial court abused its discretion by ordering separate trials, this error was harmless. MCR 2.613(A). Defendants argue that, before the trial court granted plaintiff's motion to separate the cases for trial, plaintiff and Mascas were parties to a single case by virtue of the earlier consolidation orders (for discovery and for trial). In that context, defendants therefore argue that the jury in plaintiff's case would have been permitted to assign fault to Mascas notwithstanding any failure on their part to file a notice of nonparty at fault. Defendants assert that, as a result of the separation of the cases for trial, in conjunction with the striking of

---

[9] The signature appears on a line under which is printed FRED L. BORCHARD for DONALD A. TEEPLE, CIRCUIT JUDGE. However, the signature itself appears to be that of Judge Teeple. Although Judge Borchard presided over the hearing that led to the entry of the March 2, 2017 order, a court speaks through its written orders. *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009).

their notice of nonparty at fault, they lost the right to have the jury instructed that it could assign fault to Mascas when rendering its verdict. Defendants therefore ask this Court to order that, at a new trial on remand, they shall be permitted to have the jury instructed to that effect. But defendants are incorrect in the premise underlying their argument because plaintiff and Mascas were never parties to the same case.

Defendants assume, without elaboration, that at a minimum the two cases became one case when they were ordered consolidated for trial. Defendants confuse consolidation with joinder. This Court considered this issue in *Chen v Wayne State Univ*, 284 Mich App 172, 195-196; 771 NW2d 820 (2009), stating:

> The court rules provide trial courts with the discretion to consolidate multiple cases when the cases involve "a substantial and controlling common question of law or fact. . . ." MCR 2.505(A). However, this court rule is silent with regard to whether the consolidated cases are effectively merged into a single case. As one commentator has noted, the "term 'consolidation' is used to describe two different situations in which separate actions are 'joined' and tried together." 3 Longhofer, Michigan Court Rules Practice (5th ed), § 2505.3, p 79.
>
>> The first situation is that in which there are two or more actions pending, normally between the same parties, and the actions are joined together to form a single action in which a single judgment is entered. The second situation is that in which several actions are ordered to be tried together but each retains its separate character and requires the entry of a separate judgment. This type of consolidation does not merge the actions, the parties in one action do not become parties to the other, and the pleadings in one action are not considered pleadings in the other. [Id.]
>
> Nevertheless, although the term "consolidation" is often used to refer to both situations, Longhofer cautioned against treating MCR 2.505(A) as applying to both. Michigan Court Rules Practice, supra, p 80. This is because Michigan already makes elaborate provision for joinder when cases arise out of the same transaction or occurrence:
>
>> Theoretically, if two separate actions arise out of the same transaction or occurrence and involve the same basic subject matter, MCR 2.203(A) requires that they be joined in the original action. A defendant's request that claims not so joined be "consolidated" is in reality a motion for compulsory joinder under MCR 2.203(A), to be evaluated by the standards set forth in that rule, and is not a true motion for consolidation under MCR 2.505(A).
>>
>> Conversely, if the separate actions involve claims that could have been joined under MCR 2.203(B), but which were not, MCR 2.505(A) is hardly sufficient justification to require merger of those actions at a later time. The actions should, appropriately, retain their individual identities. This is

> especially true if additional parties are present. [Longhofer, supra, p 80 (emphasis in original).]

Although no court has directly confronted the issue present in this appeal, the few Michigan courts to have addressed consolidation generally agree that consolidated cases should retain their separate identities.

Neither the compulsory joinder of claims rule, MCR 2.203(A), nor the necessary joinder of parties rule, MCR 2.205(A), required either plaintiff or Mascas to join the other's action as a plaintiff. However, either plaintiff or Mascas could have been added as a party to the other's action by way of a counterclaim or cross-claim. MCR 2.203(G)(1). See also MCR 2.206 (providing criteria for permissive joinder of parties). There is therefore no basis for treating the consolidation motions in this case as being "in reality a motion for compulsory joinder." *Chen*, 284 Mich App at 195 (quotation marks and citation omitted). This is all the more true because the initial consolidation in this case was for discovery purposes only, and because the trial court stated, when granting defendants' motion to consolidate for trial, that the jury would be instructed to consider plaintiff's and Mascas's claims separately. Indeed, the order consolidating the cases for trial went so far as to leave open the possibility of impaneling two juries. There is no indication that any party considered the two cases to be "joined together to form a single action in which a single judgment is entered." *Chen*, 284 Mich App at 194 (quotation marks and citation omitted).

Further, this Court has noted, albeit in the context of considering how to treat a federal court's supplemental jurisdiction over state-law claims for purposes of res judicata, that "[c]onsolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or *make those who are parties in one suit parties in another*." *Bergeron v Busch*, 228 Mich App 618, 623; 579 NW2d 124 (1998) (emphasis added; internal quotation marks and citations omitted); see also *People ex rel Director of Conservation v Babcock*, 38 Mich App 336, 343; 196 NW24 489 (1972) (holding that the cases in question were consolidated "for the court's convenience in trying the common questions involved in both suits" and in such cases "consolidation does not merge the two cases," "they keep their separate identities," and "parties in one action do not become parties to the other").

Because Mascas was not a party to plaintiff's suit, and because the trial court correctly struck as untimely defendants' notice of nonparty at fault, defendants have no right, in a new trial on remand, to have the jury instructed that it may find Mascas wholly or partially at fault. Mascas's trial has already concluded, and defendants identify no other way in which they were prejudiced by the separate trials. We therefore conclude that any error by the trial court was harmless. MCR 2.613(A).

We accordingly vacate the judgment, reverse the denial of defendants' motion for new trial, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. Neither party having prevailed in full, no costs are awarded. MCR 7.219(a).


/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens
/s/ Mark T. Boonstra